# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-0723V**

HEATHER SILVERMAN,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: October 13, 2026

*Jonathan Joseph Svitak, Shannon Law Group, P.C., Woodridge, for Petitioner.*

*Joseph Douglas Leavitt, U.S. Department of Justice, Washington, DC, for Respondent.*

**DECISION DISMISSING PETITION**[1]

On January 12, 2021, Heather Silverman filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that as a result of an influenza ("flu") vaccine she received on September 8, 2020, she suffered a shoulder injury related to vaccine administration ("SIRVA") as defined by the Vaccine Injury Table (the "Table"). Petition (ECF No. 1) at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I conclude that Petitioner has not established by preponderant evidence that she likely suffered the residual effects or complications of

[1]Because this decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

such illness, disability, injury, or condition for more than six months after administration of the vaccine – the "severity requirement" applicable to all Program cases. It is therefore appropriate to dismiss this matter now, rather than transfer out of SPU for additional proceedings.

## I. Relevant Procedural History

The claim was initiated on January 12, 2021, and relevant medical records were filed by April 2023. ECF Nos. 8, 16-17, 21-22, 28-29. On March 19, 2024, Respondent file his Rule 4(c) Report contesting entitlement in this case on severity grounds. Respondent's Report (ECF No. 44) at 1, 3-5. On June 18, 2024, I issued an Order to Show Cause setting a deadline for Petitioner to file a response and submit any other material to prove that she could meet the six-month severity requirement. On November 15, 2024, Petitioner filed a Response ("Resp.") along with an additional exhibit (a video). This case is now ripe for adjudication.

## II. Relevant Medical History

### 1. Medical Records

Ms. Silverman was 40 years old when she received a flu vaccine in her left deltoid on September 8, 2020, during her annual exam at her primary care doctor's office. Exhibit ("Ex.") 3 at 8; Ex. 8 at 10. Petitioner's medical history does not indicate any history of pain, injury, or dysfunction in her left shoulder. Ex. 8 at 10-39.

Eleven days later (September 19, 2020), Ms. Silverman sent a message to her primary care provider ("PCP") reporting that she was experiencing pain and reduced mobility "since receiving the flu shot[.]" Ex. 1 at 6. She also stated that her brother-in-law was in the medical field, and that he told her that the alleged injury "sound[ed] like SIRVA." *Id*. Petitioner's PCP, Dr. Stephan Niles, responded two days later and provided a referral for physical therapy ("PT") and an order for an ultrasound. *Id*. in the email, Dr. Niles stated that her alleged injury "could definitely be SIRVA." *Id*.

On September 22, 2020, Ms. Silverman sent another message to Dr. Niles reporting worsening pain in her left shoulder at night, and requesting a prescription to help with her pain. Ex. 1 at 5. That same day, Ms. Silverman underwent an ultrasound of her left shoulder, which revealed a "[n]ormal upper left extremity..." Ex. 3 at 12. Dr. Niles recommended that Petitioner attend physical therapy to treat her pain. Ex. 1 at 3. He told Petitioner that these injuries "should resolve over time." *Id.*

On September 24, 2020, Ms. Silverman went to Evolution Physical Therapy for an initial evaluation for "L shoulder pain after a flu shot." Ex. 4 at 16. Petitioner noted pain levels between 8-10/10 and stated that she was hoping to relieve her pain and regain full range of motion of her left shoulder. *Id*. Ms. Silverman reported that her symptoms limited her from performing her ADLs (activities of daily living), which included "dressing and lifting objects away and overhead," and that they also hindered her ability to participate in health and wellness activities. *Id*. A physical examination revealed "greater [passive range of motion] over [active range of motion] …" *Id*. at 17. Between September 24 and October 19, 2020, Petitioner attended seven total PT appointments. Ex. 4 at 1-22.

Ms. Silverman thereafter underwent no shoulder-specific treatment for approximately 17 months – through the date of the filing of the Petition in January 2021. She returned to Evolution Physical Therapy again on March 15, 2022, for an initial evaluation for "pain in left shoulder, impingement syndrome of left shoulder, weakness," the same injury for which she previously received treatment in the fall of 2020. Ex. 6 at 1. During this evaluation, she was found to have positive Hawkins/Kennedy impingement signs on the left, but normal active range of motion. *Id*. at 2. Skilled therapy twice a week for the next eight weeks was recommended, although there are no additional records filed indicating that Petitioner attended any additional PT sessions.

On June 9, 2022, Petitioner began attending acupuncture treatment at Derby Ho Acupuncture. Exhibit 13 at 1. Petitioner states that her acupuncture treatment was provided in part to address her ongoing shoulder pain.[3] Petitioner attended acupuncture sessions from June 9, 2022, through May 16, 2023. *Id*. at 1-19.

No additional treatment records have been filed.

**2. Petitioner's Declarations**

Petitioner submitted two sworn declarations in support of her claim. *See* Exs. 5 and 14. Petitioner stated that although she started physical therapy at Evolution PT, the sessions were "painful" and that by the end of her sessions, her shoulder was still stiff and painful. *Id*. at 5. Petitioner states that she stopped attending physical therapy primarily due to cost. Ex. 14 at ¶4. Instead, Petitioner stated that she had a friend who could provide informal therapy at her house. Ex. 5 at ¶ 16.

Ms. Silverman stated that prior to receiving the flu shot, she was an active person and physically fit. Ex. 5 at ¶ 7. She performed the home exercise program she was given

[3] The acupuncture records all reference "pain in the right shoulder," although Petitioner maintains that this was a typographical error and should reference the left shoulder. *See e.g.,* Ex. 19 at 3; Resp. at 6.

by Evolution PT to keep her shoulder from freezing up. *Id*. These routines were somewhat effective, but she continued to experience pain and strength deficits in her left shoulder throughout 2021, which impacted her ability to carry heavy items, lift and reach overhead, and perform her work duties. Ex. 5 at ¶ 17. In March of 2022, Ms. Silverman stated that her left shoulder pain increased to the point that she felt she should seek professional assistance. *Id*. She returned to Evolution PT and reported that her left shoulder symptoms were still present since the September 8, 2020 flu shot. *Id*.

**3. Other Evidence**

Ms. Silverman submitted receipts from CorePower Yoga studio showing attendance for yoga sessions, and a video that she produced during her injury. Exs. 12-13, and 15. The receipts from CorePower Yoga are dated from December 30, 2022, to January 9, 2023. *See generally* Ex. 12.

In the video that Petitioner filed and which she uploaded to her YouTube channel, Petitioner stated that she was still experiencing the effects of her SIRVA symptoms and was concerned that her left shoulder might never be the same. Petitioner stated that she wanted to spread awareness about SIRVA and possibly connect with others who had also experienced it. Petitioner also discussed the impact that her SIRVA symptoms had had on her daily life, physical health, and ability to perform her job. *Id*.

## III. <u>Applicable Law</u>

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of*

*Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## Analysis

Petitioners not asserting a vaccine-related death or other injury requiring a surgical intervention and inpatient care must demonstrate that they suffered the residual effects or complications from their vaccine-related injury for more than six months. Section 11(c)(1)(D); *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011). Petitioners bear the burden of establishing this preponderantly. *Song v. Sec'y of Health & Hum. Servs.*, 31 Fed. Cl. 61, 65–66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 1994). They cannot establish the length or ongoing nature of an injury solely through personal statements but rather must "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months . . ." *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995), aff'd, 93 F.3d (Fed. Cir. 1996).

While even mild symptoms that do not require intensive medical care may satisfy the severity requirement, ongoing medical treatment for conditions unrelated to an alleged vaccine injury do not. *Compare Wyatt v. Sec'y of Health & Hum. Servs.*, No. 14-706V, 2018 WL 7017751, at *22–23 (Fed. Cl. Spec. Mstr. Dec. 17, 2018) (petitioner's post-vaccination GBS resolved within three months; subsequent ongoing medical treatment for upper respiratory and gastrointestinal infections did not satisfy six-month requirement), with *Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (ongoing mild GBS symptoms that did not require active medical care nevertheless satisfied severity requirement).

### Six-Month Sequela

In his Rule 4(c) Report, Respondent argues that Petitioner cannot establish by preponderant evidence that she suffered the residual effects of her alleged left shoulder injury for more than six months after her vaccination. Respondent's Report at 3-4. Because Petitioner received a flu vaccine on September 19, 2020, and alleges immediate pain (or at least pain within the 48-hour Table timeframe for a SIRVA injury), severity must be established at least through March 19, 2021 (six months after the administration date of September 19, 2020). But as noted described below, the record does not establish that the pain documented in late September/October 2020 likely persisted that long.

Petitioner received the vaccination at issue in this case on September 8, 2020. Ex. 3 at 8. But her treatment only spanned a period of approximately five weeks – between her September 8, 2020 flu vaccination and October 19, 2020. Ex. 4 at 1-22. Her last PT session at Evolution Physical Therapy occurred on October 19, 2020. And her next formal treatment event was in the spring of 2022, more than a year and a half later. Ex. 6 at 1. This is simply too long a gap to conclude that Petitioner's symptoms persisted. Indeed,

even if it is assumed that at the time the case was filed (January 2021) Petitioner was experiencing symptoms, her failure to seek treatment thereafter significantly undermines a finding of six months of residual effects.

In an attempt to explain the treatment gap, Ms. Silverman stated in her affidavit that when she stopped going to physical therapy, she "diligently performed the exercises I learned from the therapists in my home… Later, in 2021 and into 2022, when it was safe to return to indoor exercise, I went to a yoga studio to keep up with my exercise and stretching." Ex. 14 at 2. Ms. Silverman adds that in 2022, she discovered acupuncture and that she has used acupuncture and cupping treatments to reduce her shoulder symptoms. *Id*.

Although Ms. Silverman has asserted in her supplemental affidavit that she continues to have discomfort in her left shoulder (Ex. 14 at 2, ¶7), she has not submitted any medical records or other evidence to substantiate her assertions. She did not attend the recommended PT as was recommended. She continued to attend yoga classes from December 30, 2022, to January 9, 2023. Ms. Silverman only produced receipts of these yoga classes which only prove that she was able to attend yoga on a consistent basis, a practice that involves rigorous use of both shoulders. If anything, Petitioner's consistent attendance at these classes only shows that her shoulder pain was minimal, if present at all.

Thus, it is more likely on the basis of this record that Ms. Silverman's shoulder injury had mostly resolved within the first six months after vaccination. The existing record lacks preponderant evidence connecting any shoulder injury Ms. Silverman may have experienced in March 2022 with her earlier symptoms in October 2020. There is just too long of a gap of time to make a connection in this specific situation.

The sworn declarations do little to cure the evidentiary deficiencies with respect to severity. The facts in this case are similar to *Black v. Sec'y of Health & Human Servs*, No. 21-009V, 2023 WL 4446500 (Fed. Cl. Spec. Mstr. May 22, 2023). The *Black* petitioner received a flu vaccine in his left shoulder and then suffered documented shoulder pain for approximately three months, from October 31, 2019, to January 29, 2020. *Id*. at *1. Mr. Black had an appointment with his urologist for an unrelated condition in March 2020, during which "[n]o comment was made about shoulder pain." *Id*. at *2. Thereafter, the petitioner did not seek treatment for his left shoulder again until July 7, 2021, more than 17 months after his last appointment for treatment of his shoulder. *Id*. In that case, I explained that, although in many cases I had allowed that,

> the intervention of the Pandemic can reasonably be understood to have caused individuals to put off treatment, especially in the spring of 2020, the gap in this case is too large to be excused for this reason – especially since Petitioner's cessation of treatment began in late-January 2020, and thus somewhat before the real initial impact of the Pandemic began.

Here too, the 17-month gap in the record during which time Ms. Silverman did not seek medical care for her allegedly persistent left shoulder pain "[was] too large to ignore" for her claim to meet the six-month severity requirement. A petitioner cannot establish the length or ongoing nature of an injury solely through personal statements but rather must "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months . . ." *Black v. Sec'y of Health & Hum. Servs*., 33 Fed. Cl. 546, 550 (1995), aff'd, 93 F.3d (Fed. Cir. 1996). Ms. Silverman had less than two months of documented treatment for left shoulder issues, and then there is no mention of shoulder pain for the next 17 months. Thus, I find that there is insufficient evidence to support a finding that Ms. Silverman suffered the residual effects or complications of her alleged left-sided SIRVA for more than six months after administration of the flu vaccine.

## Conclusion

Based on the entire record in this case, I find that Petitioner has failed to prove by preponderant evidence that her injury or its residual effects lasted more than six months. Accordingly, Petitioner has not established entitlement to an award of damages (under the Table or causation-in-fact version of the claim), and I must DISMISS the claim.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[4]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.